# ARGONAUT INSURANCE COMPANY, Plaintiff-Appellant,

v.

# LABOR AND INDUSTRY REVIEW COMMISSION, Defendant-Respondent,

# Luthresa N. JOHNSON, Defendant.

Court of Appeals

*No. 85–2167. Submitted on briefs June 4, 1986.—Decided June 25, 1986.*

(Also reported in 392 N.W.2d 837.)

For the plaintiff-appellant the cause was submitted on the briefs of *Michael S. Heffernan* and *Richard Cayo,* and *Walther & Halling, S.C.,* of Milwaukee.

For the defendant-respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Stephen M. Sobota,* assistant attorney general.

Before Gartzke, P.J., Dykman and Eich, JJ.

EICH, J. Argonaut Insurance Company appeals from a judgment affirming an order of the Labor and Industry Review Commission. The commission's order confirmed an award of worker's compensation benefits to Luthresa N. Johnson for a permanent total disability. While the parties raise several issues on appeal, we consider one to be dispositive: did the hearing examiner abuse her discretion in denying Argonaut's request to postpone the hearing to permit it to obtain an independent medical examination? We answer the question in the affirmative and reverse.

The facts are not in dispute. Johnson, a nursing home employee, injured her back while lifting a patient out of bed. Prior to this incident, she had suffered

from a variety of illnesses, notably rheumatic heart disease in association with severe aortic insufficiency and congestive heart failure. Johnson was hospitalized shortly after the lifting incident and applied to the Department of Industry, Labor and Human Relations for worker's compensation benefits. Her treating physician, Dr. Roger Lim, submitted a medical report to the department stating his opinion that Johnson's work injury had probably aggravated and accelerated her preexisting heart condition, resulting in permanent and total disability.

Argonaut, the nursing home's insurer, was given a copy of Dr. Lim's report at a prehearing conference, and announced its intention to obtain an independent medical examination. On June 20, 1983, Argonaut's attorneys interviewed Lim with respect to the opinions expressed in his report. The following day, June 21, Argonaut sent a letter to Lim summarizing the interview:

> 1. You indicated that Ms. Johnson's work-related injury was a cervical strain or sprain.
>
> . . . .
>
> 4. You indicated that, assuming the cervical strain did aggravate her heart condition in the manner described above such aggravation was temporary not permanent. That is, . . . the strain . . . is not now part of the cause for her permanent total disability.
>
> 5. You indicated Ms. Johnson is permanently disabled because of her cardiac problems which predated the injury and that her heart condition has not permanently worsened as a result of the injury to her back at work.

The letter was sent to Lim, who returned it to Argonaut after signing a statement that he had read it

and that it "accurately reflects my opinion." After receiving the letter from Lim, Argonaut did nothing more about obtaining an independent medical examination.

On December 12, 1983, the department noticed the hearing on Johnson's claim for February 15, 1984. As the hearing date approached, settlement discussions with Johnson's attorneys led Argonaut to believe that Lim might testify in support of Johnson's claim for permanent disability benefits despite the statements in the June 21 letter. Argonaut immediately attempted to schedule an examination in late January but was advised that Johnson was in Arizona, could not be reached by telephone, and would not return to Wisconsin until the eve of the hearing.

Argonaut then wrote to the hearing examiner requesting a postponement or, in the alternative, permission to present additional evidence at a later date, after Johnson could be examined by one of its doctors. The examiner did not respond to the letter. Argonaut renewed the request when the hearing convened on February 15, 1984, but the examiner did not rule on the motion. The hearing proceeded, and Dr. Lim testified that Johnson's heart ailments were aggravated to the point of permanent total disability by her back injury—not by the cervical injury discussed in the June 21 letter but by lumbosacral pain, a condition not mentioned in the letter. At the close of the hearing, Argonaut again requested a continuance, and the examiner concluded the proceedings without responding. Several days later the examiner wrote to Argonaut, denying the request for a continued hearing without further comment or explanation.

Whether to postpone or continue a hearing is committed to the sound discretion of the agency. *Theodore Fleisner, Inc. v. ILHR Department,* 65 Wis. 2d 317, 326, 222 N.W.2d 600, 606 (1974). The agency's decision to deny a motion for continuance will not be upset absent a "flagrant abuse" of that discretion. *Nelson Mill & Agri-Center, Inc. v. ILHR Dept.,* 67 Wis. 2d 90, 94, 226 N.W.2d 435, 437 (1975). We believe this is such a case.

Section 102.13(1), Stats., requires a compensation claimant to submit to a "reasonable" examination by a physician selected by the employer. It is true, as the commission suggests, that Argonaut had ample time to arrange for an independent medical examination prior to the hearing. We also are aware of the commission's rule that it will consider requests for postponement only if received "within a reasonable time before the date of the hearing," and that such requests will not be granted because of "scheduling problems [or] the convenience of the parties" but only for "extraordinary circumstances." Wis. Adm. Code, sec. Ind 80.09. Both parties concede, however, that the sole issue on appeal is the reasonableness of Argonaut's conduct under the circumstances; and we are satisfied that it was reasonable for Argonaut to forego the examination in reliance on the June 21 letter.

That letter, attested to as an accurate summary of the opinion of Johnson's treating cardiologist, unambiguously states that her work injury was a cervical strain which did not cause any permanent disability. When Argonaut learned from Johnson's counsel shortly before the hearing that Dr. Lim might testify that she had indeed become permanently disabled as a result of the injury to her back, it immediately took steps to secure an examination, only to find that John-

389

son was in Arizona, *incommunicado,* where she would remain until the hearing was scheduled to commence.

In *Dietz v. Hardware Dealers Mut. Fire Ins. Co.,* 88 Wis. 2d 496, 276 N.W.2d 808 (1979), Hardware's insured, the defendant in an automobile accident case, gave a statement to the plaintiff's counsel six days before trial in which he retracted his earlier accounts of the accident and essentially conceded his own negligence. The trial court denied Hardware's request for a continuance. The supreme court reversed, noting the "crucial fact" that the insured's contradictory statements were exposed only six days before trial, concluding:

> Without being granted a continuance to allow for a more exhaustive investigation based upon the effects of the new facts related in the June 19th statement, we hold it constituted surprise of a prejudicial nature leaving the insurer in a precarious position as to a proper trial defense of the claim. The insurer's request for a continuance was legitimate and timely. Therefore, we hold the trial court abused its discretion when it denied the continuance motion and a miscarriage of justice resulted. [Citation omitted.] *Id.* at 507, 276 N.W.2d at 813–14.

The commission argues that *Dietz* is inapplicable because the insurer's knowledge of the contradictory statements came only six days prior to trial and thus could be considered an "extraordinary circumstance" within the meaning of Wis. Adm. Code, sec. Ind. 80.09, whereas Argonaut's request for a continuance was simply the result of a "scheduling problem." We disagree.

This is much more than a scheduling problem. Argonaut had every right to rely on Lim's signed, unequivocal statement that Johnson's work-related in-

jury did not cause any permanent disability. That letter misled Argonaut to its detriment. The apparent reversal of the medical opinion stated in Lim's letter is akin to the last-minute "surprise" facing the insurer in *Dietz,* or the employer in *Bituminous Casualty Co. v. ILHR Department,* 97 Wis. 2d 730, 295 N.W.2d 183 (Ct. App. 1980), who was held entitled to an adjournment where events at the hearing signaled a possible increase in the claimant's disability from two to fifty percent.

The hearing examiner denied the request for a continuance without explanation or comment. Discretion contemplates a process of reasoning, beginning with the facts of record and moving toward "a conclusion based on a logical rationale founded upon proper legal standards." *McCleary v. State,* 49 Wis. 2d 263, 277, 182 N.W.2d 512, 519 (1971). Our first inquiry is whether discretion was in fact exercised. The inquiry is frustrated when, as in this case, the decisionmaker acts without giving the parties or the reviewing court any inkling of the reasons underlying the decision. While we often will undertake our own examination of the record to determine whether discretion has been exercised, *Hedtcke v. Sentry Ins. Co.,* 109 Wis. 2d 461, 471, 326 N.W.2d 727, 732 (1982), we will not do so in all cases. *Perrenoud v. Perrenoud,* 82 Wis. 2d 36, 48–49, 260 N.W.2d 658, 664 (1978).

Discretion is more than an unexplained choice between alternatives. *Reidinger v. Optometry Examining Board,* 81 Wis. 2d 292, 297, 260 N.W.2d 270, 273 (1977). "[T]here should be evidence in the record that discretion was in fact exercised and the basis of that exercise of discretion should be set forth." *State v. Hutnik,* 39 Wis. 2d 754, 764, 159 N.W.2d 733, 738 (1968). There is

nothing in the record before us to indicate that the examiner exercised her discretion as that term has been defined by the courts, and her failure to do so is in itself an abuse of discretion. "Unless there is evidence that the [decisionmaker] has undertaken a reasonable inquiry and examination of the facts as the basis of his [or her] decision, [that] decision will be disregarded by this court. Such a decision on its face shows an abuse of discretion for failure to exercise discretion." *McCleary,* 49 Wis. 2d at 277–78, 182 N.W.2d at 520.

Under the circumstances of this case, the examiner's unexplained denial of Argonaut's motion for a continuance was an abuse of discretion.

*By the Court.*—Judgment reversed. Cause remanded with directions to order the commission to grant appellant's request for a continuance for the purpose of obtaining an independent medical examination.