David K. BALDWIN, Plaintiff-Appellant,†

v.

LABOR AND INDUSTRY REVIEW COMMISSION, Angelo Luppino, Inc. and American Economy Insurance, Inc., Defendants-Respondents. [Case No. 98–3090]

Richard TOLAND, Plaintiff-Appellant,†

v.

LABOR AND INDUSTRY REVIEW COMMISSION, Link Brothers, Inc., and Continental Insurance Company, Defendants-Respondents. [Case No. 98–3124]

Mildred BLACK, Plaintiff-Appellant,†

v.

LABOR AND INDUSTRY REVIEW COMMISSION, Aqvila, inc., and Westchester Fire Insurance Company, Defendants-Respondents. [Case No. 98–3125]

Deborah G. BURKE, Plaintiff-Appellant,†

v.

LABOR AND INDUSTRY REVIEW COMMISSION, Clothes Basket Dry Cleaners, and American States Insurance Company, Defendants-Respondents. [Case No. 98–3126]

†Petition to review denied.

*See Callaghan's Wisconsin Digest, same topic and section number.

Court of Appeals

*Nos. 98–3090, 98–3124, 98–3125, 98–3126. Oral argument May 13, 1999.—Decided June 2, 1999.*

(Also reported in 599 N.W.2d 8.)

Case No. 98–3090: On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Daniel D. Hannula* and oral argument by *Daniel D. Hannula* of *Ashley, Hannula & Halom* of Superior.

On behalf of the defendant-respondent, Labor and Industry Review Commission, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Jerome S. Schmidt*, assistant attorney general, and oral argument by *Jerome S. Schmidt* of Madison.

On behalf of the defendants-respondents, Angelo Luppino, Inc., and American Economy Insurance Company, the cause was submitted on the brief of *David A. Piehler*, and oral argument by *David A. Piehler* of *Piehler & Strande, S.C.* of Wausau.

Case No. 98–3124: On behalf of the plaintiff-appellant, the cause was submitted on the brief of *Boad S. Swanson,* and oral argument by *Boad S. Swanson* of *Marcovich, Cochrane, Milliken & Swanson* of Superior.

On behalf of the defendant-respondent, Labor and Industry Review Commission, the cause was submitted on the brief of *James E. Doyle,* attorney general, and *Jerome S. Schmidt,* assistant attorney general, and oral argument by *Jerome S. Schmidt* of Madison.

On behalf of the defendants-respondents, Link Brothers, Inc., and Continental Insurance Company, the cause was submitted on the brief of *Ronald S. Aplin* and *Karen M. Gallagher* of *Coyne, Niess, Schultz, Becker & Bauer, S.C.* of Madison, and oral argument by *Ronald S. Aplin.*

Case No. 98–3125: On behalf of the plaintiff-appellant, the cause was submitted on the brief of *Boad S. Swanson* and oral argument by *Boad S. Swanson* of *Marcovich, Cochrane, Milliken & Swanson* of Superior.

On behalf of the defendant-respondent, Labor and Industry Review Commission, the cause was submitted on the brief of *James E. Doyle,* attorney general, and *Jerome S. Schmidt,* assistant attorney general, and oral argument by *Jerome S. Schmidt* of Madison.

On behalf of the defendant-respondent, Aqvila, Inc., and Westchester Fire Insurance Company, the cause was submitted on the brief of *James R. Johnson* and oral argument by *James R. Johnson* of *Lommen, Nelson, Cole & Stageberg, P.A.* of Hudson.

Case No. 98–3126: On behalf of the plaintiff-appellant, the cause was submitted on the brief of *Boad S. Swanson* and oral argument by *Boad S. Swanson* of *Marcovich, Cochrane, Milliken & Swanson* of Superior.

On behalf of the defendant-respondent, Labor and Industry Review Commission, the cause was submitted

on the brief *James E. Doyle,* attorney general, and *Jerome S. Schmidt,* and oral argument by *Jerome S. Schmidt* of Madison.

On behalf of the defendants-respondents, Clothes Basket Dry Cleaners and American States Insurance Company, the cause was submitted on the brief of *William J. Westerlund* and oral argument by *William J. Westerlund* of *Weld, Riley, Prenn & Ricci, S.C.* of Eau Claire.

Before Cane, C.J., Myse, P.J., and Hoover, J.

CANE, C.J.   David Baldwin, Richard Toland, Mildred Black, and Deborah Burke[1] appeal circuit court judgments affirming the Labor and Industry Review Commission's (LIRC's) decisions that dismissed with prejudice their applications for worker's compensation hearings with the Department of Workforce Development (the department). Based on their assertion that they could withdraw their applications as a matter of right, the appellants sought withdrawal due to the alleged bias of administrative law judge (ALJ) Ronald Ryan. After chief ALJ James O'Malley denied their requests, the appellants failed to appear at their respective hearings or present any evidence on the merits, and as a result, Ryan and LIRC found them in default and dismissed their applications with prejudice.

We are presented with three issues on appeal. First, we must decide whether the Worker's Compensation Act,[2] ch. 102, STATS., allows the department the discretion to deny an applicant's motion to withdraw

---

[1] These appeals were consolidated by this court's April 6, 1999, order.

[2] *See* § 102.01(1), STATS.

an application, and if so, whether the department flagrantly misused its discretion by denying the appellants' motions to withdraw. The second issue is whether the department flagrantly misused its discretion by dismissing their applications with prejudice under § 102.18(1)(a), STATS., because of default. Finally, we must determine whether the appellants' due process rights to a fair and impartial decisionmaker were violated due to Ryan's alleged bias.

The appellants maintain that, as applicants for worker's compensation hearings, they may withdraw their applications without prejudice at any time under ch. 102, STATS., because: (1) neither ch. 102 nor the case law interpreting it specifically preclude an applicant from withdrawing an application; (2) § 102.18(1)(a), STATS., which LIRC cited as controlling, does not allow withdrawn claims to be dismissed with prejudice; (3) "the custom" or common practice is to dismiss without prejudice, particularly when a reasonable basis exists for withdrawal; and (4) ch. 102 provides no alternative or "safety valve" other than application withdrawal when the ALJ is biased. The appellants also contend that because Ryan was biased, dismissal with prejudice violated their due process rights under *Guthrie v. WERC*, 111 Wis. 2d 447, 331 N.W.2d 331 (1983).[3]

We first conclude that the department's power to deny a motion to withdraw is necessarily implied from the authority the legislature has specifically conferred on the agency to manage its own calendar and control its own internal affairs. *See* § 102.17(1)(a), STATS. (department's discretion to adjourn hearings). We also

---

[3] In their briefs, Toland, Black, and Burke assert that dismissal with prejudice violated their equal protection rights. Because they withdrew this contention at oral argument, we will not address it.

hold that the department properly exercised its discretion both when it denied the motion to withdraw and dismissed the application with prejudice because of default. Finally, we conclude that the appellants' due process rights were not violated because substantial and credible evidence supports LIRC's factual findings that Ryan was not biased. Accordingly, we affirm the judgments upholding LIRC's decisions.

## I. PROCEDURAL BACKGROUND

### 1. Toland, Black, and Burke[4]

Toland, an employee of Link Brothers, Inc.; Black, an employee of Aqvila, Inc.; and Burke, an employee of Clothes Basket Dry Cleaners, all filed applications for hearing with the Department of Workforce Development. Their applications indicated that they would be ready for hearing within days of, or even before, the date on which they filed their applications. By a June 26, 1996, notice of hearing, the department notified Toland, Black, and Burke that their hearings were scheduled for the week of September 9 in Superior before ALJ Ronald Ryan. The "Hearing Information" on the reverse side of the notices states that "failure to appear as scheduled may result in a decision by default under Wisconsin Statutes, § 102.18(1)(a)."

On July 31, Toland, Black, and Burke's counsel requested "substitutions" against Ryan under § 227.46(6), STATS.,[5] alleging that Ryan had "expressed

---

[4] Toland, Black, and Burke retained the same law firm and filed identical briefs. Because the procedural facts underlying their appeals are substantially similar, we have set them forth collectively. Because Baldwin's procedural facts are sufficiently different, we state them separately.

[5] Section 227.46(6), STATS., provides:

bias against our office and the clients that we represent." Attached to the letter were affidavits from seven attorneys reflecting their opinions that Ryan is biased against applicants. On August 15, Chief ALJ O'Malley denied the substitution requests, stating that § 227.46(6) does not apply to ch. 102, STATS., and that neither ch. 102 nor WIS. ADM. CODE § DWD 80, allow for substitution of ALJs. Additionally, the denial letter pointed out that the remedy for an alleged incorrect result after hearing before an ALJ is a timely appeal to LIRC. Finally, the letter indicates that the "parties should make the necessary arrangements to present their respective cases at the upcoming hearings."[6]

A few days before their respective hearings, Toland, Black, and Burke notified the department in writing that they were withdrawing their applications for hearing based on the same grounds as the earlier

---

The functions of persons presiding at a hearing or participating in proposed or final decisions shall be performed in an impartial manner. A hearing examiner or agency official may at any time disqualify himself or herself. In class 2 and 3 proceedings, on the filing in good faith of a timely and sufficient affidavit of personal bias or other disqualification of a hearing examiner or official, the agency or hearing examiner shall determine the matter as part of the record and decision in the case.

[6] We remind the parties that a proper appellate brief requires citations to the record, *see* RULE 809.19(1)(e), STATS., and that citations only to an appendix do not conform to rules of appellate procedure. On this ground alone, we could refuse to address appellants' arguments further. *See Keplin v. Hardware Mut. Cas. Co.*, 24 Wis. 2d 319, 324, 129 N.W.2d 321, 323 (1964). This court spent substantial time combing the record to verify the parties' factual assertions. We stress that it is not this court's duty to "sift and glean the record *in extenso* to find facts which will support an [argument]." *Tam v. Luk*, 154 Wis. 2d 282, 291 n.5, 453 N.W.2d 158, 162 n.5 (Ct. App. 1990).

608

substitution requests. The letters indicate that because the statute of limitation for filing a worker's compensation claim had not yet expired, they reserved the right to refile applications for hearing in the future. Neither Toland, Black, nor Burke appeared at their respective hearings during the week of September 9; although their counsel appeared at the hearings, no evidence was presented on their behalf.

In ordering that Toland, Black, and Burke's applications be dismissed with prejudice, Ryan stated that their remedy for any alleged bias or prejudice is a petition for review to LIRC under § 102.18(3), STATS., that neither he nor O'Malley flagrantly misused their discretion, and that substitution on demand is not available to ch. 102, STATS., litigants.

In a memorandum decision, LIRC affirmed Ryan's decision and adopted Ryan's findings and conclusions as its own. LIRC gave the following reasons for its decision. First, it concluded that under §§ 102.18 and 102.17, STATS., the statutory limits on an applicant's ability to withdraw a claim is discretionary and will be allowed only under extraordinary circumstances. Based on what LIRC characterized as Toland, Black, and Burke's deliberate defiance of the statutory procedure for adjudication, and based on O'Malley's warning regarding dismissal with prejudice, it concluded that their applications were properly dismissed. Second, LIRC rejected their argument that "the custom" is to dismiss applications without prejudice.

Third, LIRC rejected their contention that they had "no alternative" other than withdrawal due to Ryan's alleged bias. Rather, it emphasized that had the appellants presented the merits of their cases to Ryan, LIRC would have reviewed their cases and acted as the original and ultimate fact finder under § 102.18(3),

609

STATS. After the circuit court affirmed LIRC's decision, Toland, Black, and Burke brought this appeal.

## 2. Baldwin

David Baldwin filed an application for a worker's compensation hearing for injuries he allegedly received while working for Angelo Luppino, Inc. By a June 26, 1996, notice, Baldwin learned that the hearing was scheduled for September 12 before ALJ Ryan. On August 20, Baldwin requested that his application be dismissed because his medical condition had changed. In a September 5 letter to Baldwin's attorney, chief ALJ O'Malley denied the request, stating that the request was untimely and unnecessary because Baldwin could seek an interlocutory order. The letter further stated that the parties should be prepared to present their cases at the scheduled hearing.

On September 9, three days before the scheduled hearing, Baldwin's counsel called the department regarding his request, and O'Malley indicated that the application would not be dismissed. That same day, Baldwin's attorney faxed a letter to the department indicating that because of Baldwin's "additional problems," his desire to seek "additional treatment," and the unavailability of his vocational expert to testify at the hearing, he was withdrawing his application but "reserving the right to refile within the appropriate statute of limitations."

On September 10, Baldwin filed a "Notice of Withdrawal of Application," "pursuant to Wis. Stats. § 102, et al" and requested a dismissal without prejudice. While Baldwin's attorney appeared at the September 12 hearing, Baldwin did not. Contending that the department no longer had jurisdiction because the claim had been withdrawn, Baldwin's counsel

presented no evidence on the merits.[7] Baldwin's counsel did, however, make a record of an off-the-record conversation with Ryan:

> I wish to note . . . that prior to going on the record, the Administrative Law Judge asked me if I was a member of the Wisconsin Academy of Trial Lawyers. The Administrative Law Judge asked me if attorney Dennis Cochrane, who is not part of this hearing, was also a member of [WATL]. The Administrative Law Judge asked me if attorney Boad Swanson, who is not a party to this hearing, . . . was a member of [WATL], and I believe [he] asked me about another attorney, who I do not know, whether he was a member of [WATL]. Prior to reading any of the documents or a copy of any Notice of Withdrawal of the Application, the [ALJ] stated to me a rhetorical question, and I believe I wrote it down correctly . . . "You know that because of your association with WATL and Dennis Cochrane, the case will be dismissed with prejudice." I understand that the [ALJ] disagrees with me on exactly what he said concerning the [WATL] and attorney Dennis Cochrane. However, we have respectfully submitted . . . a Notice of Withdrawal of the Application, and I respectfully request the [ALJ] address this at that point.

Ryan indicated that he never said that Baldwin's claim would be dismissed with prejudice because of Baldwin's attorney's association with Dennis Cochrane and WATL. Ryan further commented that:

---

[7] In his brief, Baldwin's attorney characterizes this as a "special appearance at the hearing to resubmit a notice of withdrawal . . . ."

611

Attorney Piehler agrees that I never said that. And if I thought you were deliberately misstating me, I would be very angry, but I accept the fact that people misunderstand what is said. You have a legitimate belief that something was said that really wasn't.

Baldwin's counsel "took umbrage" with the department's inquiry regarding his professional associations and insisted that such inquiry reflected Ryan's bias. Ryan noted that in four other hearings, he had been accused of bias and prejudice and was curious if WATL had received a copy of those allegations. Baldwin's counsel left the hearing without calling any witnesses or cross-examining the employer's witnesses. After the employer presented its case, including a WC–16-B form completed by a physician indicating that Baldwin was not permanently disabled, the hearing ended.

On November 14, Ryan dismissed the case with prejudice. On review, LIRC affirmed and adopted Ryan's findings and order as its own for essentially the same reasons it did so regarding Toland, Black, and Burke's applications. However, LIRC's decision particular to Baldwin discusses the off-the-record conversation between Baldwin's counsel and Ryan:

The applicant's attorney asserts that prior to going on the record at the hearing, ALJ Ryan told him that because of his association with [WATL] and Attorney Dennis Cochrane, [his] case would be dismissed with prejudice. ALJ Ryan has denied that he told applicant's attorney the dismissal with prejudice would be linked to the attorney's association with the WATL or Attorney Cochrane. Respondent's attorney, who was also present throughout the proceeding, concurs with ALJ

Ryan's recollection, and the commission finds this recollection to be credible.

The circuit court affirmed, and Baldwin appeals.

## II. ANALYSIS

### 1. Standard of review

Toland, Black, and Burke claim that "this matter is before the Court of Appeals to review the Decision of the Honorable Michael T. Lucci." This misstates the standard of review; we review LIRC's decision, not the circuit court's. *See Margoles v. LIRC*, 221 Wis. 2d 260, 264, 585 N.W.2d 596, 598 (Ct. App. 1998). Moreover, if LIRC's decision is one committed to agency discretion, our scope of review narrows; discretionary procedural decisions in worker's compensation matters are upheld unless there has been a flagrant misuse of discretion. *See Theodore Fleisner, Inc. v. DILHR*, 65 Wis. 2d 317, 328, 222 N.W.2d 600, 607 (1974). The applicant has the burden to show that the decision should be overturned on appeal. *See Bretl v. LIRC*, 204 Wis. 2d 93, 99, 553 N.W.2d 550, 552 (Ct. App. 1996).

### 2. Withdrawal

We next address whether ch. 102, STATS., affords the department discretion to deny an applicant's motion to withdraw his application. LIRC concluded that the department may, in its discretion, deny an applicant's motion to withdraw an application if the party has displayed a pattern of dilatory conduct, citing §§ 102.17 and 102.18, STATS. It further concluded that withdrawal is allowed only under extraordinary circumstances, *see* WIS. ADM. CODE § DWD 80.09(3), and that an applicant may seek de novo review of the

613

department's decision by LIRC under § 102.18(3). LIRC, Link/Continental Insurance Company, Clothes Basket/American States Insurance Company, and Aqvila/Westchester Fire Insurance Company maintain that ch. 102 does not provide that an applicant may withdraw an application without risking dismissal with prejudice. They assert that if an applicant believes that an ALJ is biased, then the applicant must proceed with the scheduled hearing, obtain a decision from the ALJ, and then appeal to LIRC.

Toland, Black, and Burke disagree and contend that § 102.18(1)(a), STATS., is inapplicable because it deals only with postponement, which they did not seek. Because ch. 102, STATS., does not limit or condition an applicant's ability to withdraw a claim, they argue, an applicant may withdraw an application at any time for any reason subject only to the twelve-year statute of limitation. *See* § 102.17(4), STATS. Baldwin claims that allowing applicants to withdraw without prejudice would not result in "wholesale manipulation," because it is the applicants who suffer from delays, while the employers benefit.

Statutory interpretation is generally a question of law we review de novo, *see Hagen v. LIRC*, 210 Wis. 2d 12, 18, 563 N.W.2d 454, 457 (1997), but under certain circumstances, we defer to an agency's interpretation. *See Barron Elec. Co-op. v. Public Serv. Comm'n*, 212 Wis. 2d 752, 760–64, 569 N.W.2d 726, 731–32 (Ct. App. 1997). There are three levels of deference granted to an agency's legal determination: great weight deference, due weight deference, and no deference (or de novo review). *See Margoles*, 221 Wis. 2d at 264–65, 585 N.W.2d at 598. Our level of deference depends on the

level of expertise the agency has acquired in the area. *See id.* at 266–67, 585 N.W.2d at 599.

Framing the issue as the scope of LIRC's powers under §§ 102.17 and 102.18, STATS., Baldwin[8] maintains that a legal question of first impression is presented and that the appropriate level of deference is therefore de novo. LIRC, Link/Continental and Luppino/American Economy Insurance Company argue that LIRC's determination is entitled to great weight deference. We need not resolve the parties' dispute, however, because even under a de novo review, we conclude that LIRC's authority to deny an applicant's motion to withdraw an application for hearing is necessarily implied from its authority to administer its calendar under § 102.17(1)(a), STATS.

We begin our interpretation of ch. 102, STATS., by looking at the statute's plain language and striving to discern the legislature's intent. *See State ex rel. Reimann v. Circuit Court*, 214 Wis. 2d 605, 613, 571 N.W.2d 385, 387 (1997). In ch. 102, the legislature has specifically afforded LIRC the authority to control its calendar and manage its internal affairs. Section 102.17(1)(a), STATS., gives the department discretion to adjourn a hearing and provides in part:

> The department shall cause notice of the hearing on the application to be given to each party interested . . . at least 10 days before such hearing. . . . The hearing may be adjourned in the discretion of the

[8] Toland, Black, and Burke do not address the level of deference we should give LIRC's determination.

department, and hearings may be held at such places as the department designates.[9]

This statute, as well as the entire Worker's Compensation Act, are silent regarding the agency's authority to deny a motion to withdraw an application for a hearing. In interpreting legislative intent, our supreme court has declared that a legislatively created agency or board has only those powers "which are either expressly conferred or which are, by necessity, to be *implied* from the four corners of the statute under which it operates." *Racine Fire & Police Comm'n v. Stanfield*, 70 Wis. 2d 395, 399, 234 N.W.2d 307, 309 (1975), *quoted with approval in Wisconsin Patients Comp. Fund v. Wisconsin Health Care Liab. Ins. Plan*, 200 Wis. 2d 599, 611–12, 547 N.W.2d 578, 582 (1996).

The department's authority to deny a motion to withdraw is necessarily implied from its express authority to manage its calendar under § 102.17(1)(a), STATS. First, as the respondents point out, the department's ability to schedule hearings and promptly and efficiently adjudicate claims would be held hostage by an applicant's ability to withdraw his application at any time; chaos could result. For example, even the

---

[9] We also note that pursuant to this legislative authority, WIS. ADM. CODE § DWD 80.09 gives the department discretion to postpone or continue a hearing. *See Argonaut Ins. Co. v. LIRC*, 132 Wis. 2d 385, 389, 392 N.W.2d 837, 838 (Ct. App. 1986). Pursuant to § DWD 80.09(2) and (3):

(2)  Requests for postponements and continuances shall be considered by the department only if such requests are received within a reasonable time before the date of the hearing.

(3)  The department shall grant postponements and continuances only because of extraordinary circumstances. Neither the scheduling problems nor the convenience of the parties shall be considered extraordinary circumstances.

appellants conceded at oral argument that applying their analysis logically, they could withdraw their application any time before the ALJ's decision. It is not difficult to imagine the mischief this could cause. Second, the appellants' proposed construction would render the department's express authority to manage its calendar a nullity. *See State v. Ozaukee County Bd. of Adj.*, 152 Wis. 2d 552, 559, 449 N.W.2d 47, 50 (Ct. App. 1989) (no part of a statute should be rendered superfluous by interpretation). Third, in adopting this interpretation, we heed our supreme court's directive to refrain from laying down a rule that hamstrings the agency's efficient administration and operation. *See State ex rel. Cities Serv. Oil Co. v. Board of Appeals*, 21 Wis. 2d 516, 541, 124 N.W.2d 809, 822 (1963). Finally, allowing applicants the unfettered right to withdraw their applications at any time, without reason, would effectively give them a right to substitute an ALJ or "judge shop," a right ch. 102 does not provide.

Given our holding that the department has the right in the first instance to exercise its discretion and deny an applicant's motion to withdraw an application, we would normally then determine if the department's discretionary determination constitutes a flagrant misuse of discretion. *See Fleisner*, 65 Wis. 2d at 328, 222 N.W.2d at 607. But here, however, the appellants advanced no argument, either in their briefs or before the circuit court, that the department flagrantly misused its discretion by denying their motions to withdraw. Instead, they based their argument exclusively on their premise that applicants have the right to withdraw at any time and for any reason, an argument we have already rejected. In any event, the appellants conceded at oral argument that, even if the department does have the right to deny an applicant's

motion to withdraw an application, their remaining contention is that Ryan's bias violated their due process rights. Thus, because the appellants chose to frame their argument in terms of due process and not flagrant misuse of discretion, we address their due process argument later in this opinion.

## 3. Default

Given that the department has the right to deny applicants' \motions to withdraw, we next address LIRC's decision affirming Ryan's dismissal of appellants' applications with prejudice under § 102.18(1)(a), STATS., which provides: "All parties shall be afforded opportunity for full, fair, public hearing after reasonable notice, but disposition of application may be made by compromise, stipulation, agreement, *or default without hearing*." (Emphasis added.) Because this statute expressly accords the department discretion to dispose of a hearing by default, *Verhaagh v. LIRC*, 204 Wis. 2d 154, 160, 554 N.W.2d 687, 680 (Ct. App. 1996), we review for flagrant misuse of discretion. *See Fleisner*, 65 Wis. 2d at 328, 222 N.W.2d at 607.

The department has express authority under § 102.18(1)(a), STATS., to declare a default. *See Verhaagh*, 204 Wis. 2d at 160, 554 N.W.2d at 680. Based on the appellants' failure to appear or present evidence on the merits, we conclude that the department appropriately exercised its discretion in granting a default and dismissing their applications with prejudice.

Nevertheless, Baldwin contends that the default provision of § 102.18(1)(a), STATS., does not apply here because this case does not present a default situation; rather, it concerns withdrawal, about which

618

§ 102.18(1)(a) and WIS. ADM. CODE § DWD 80.05(2)[10] are silent. He reasons that when the department dismisses a withdrawn application for hearing with prejudice, such action shortens the twelve-year statute of limitations under § 102.17(4), STATS. Thus, in so doing, he argues, the department acted without or in excess of its powers under § 102.23(1)(e), STATS.

We disagree. Baldwin's argument is based on his erroneous premise that because applicants have an unfettered right to withdraw at any time without prejudice, the department lost its jurisdiction when he withdrew his application. We have already concluded that the department may, within its discretion, deny a motion to withdraw the application. Because the department may do so, Baldwin was required to appear at the hearing and present his case on the merits. He did not; therefore, as stated above, a default was proper. Thus, Baldwin's argument fails.

Next, the appellants argue that "the custom" or common practice is to dismiss applications without prejudice. To support their contention, they quote JOHN D. NEAL AND JOSEPH DANAS, JR., WORKER'S COMPENSATION HANDBOOK, § 8.8 (3d ed.), which states: "Section 102.18(1)(a) permits DWD to dismiss an application by agreement or by default without hearing. Almost without exception, such dismissals are without prejudice except if testimony has been taken or if the 12-year statute of limitations has already run." This treatise is an authoritative source for ch. 102, STATS., interpretation, Baldwin notes, citing *Lisney v. LIRC*, 171 Wis. 2d

---

[10] WIS. ADM. CODE § DWD 80.05(2) provides in part: "If no answer is mailed by the respondent within 20 days of mailing by the department, the department may issue an order by default, without hearing, in accordance with the application, as provided by s. 102.18(1)(a), Stats. (s. 102.17, Stats.)."

499, 520–21, 493 N.W.2d 14, 22 (1992). Baldwin also notes that this custom was followed when Toland, Burke, and Black were allowed to withdraw their initial applications without prejudice.

LIRC and Clothes Basket/American States disagree and insist that "the custom that really exists" affords the ALJ discretion to determine when the circumstances warrant a dismissal with prejudice or one without prejudice. We agree. DANAS AND NEAL'S treatise indeed states that the dismissals are almost always without prejudice, but it also correctly notes that the department has broad discretion in deciding whether to issue a default order. DANAS AND NEAL, *supra,* (citing *Verhaagh*, 204 Wis. 2d at 160, 554 N.W.2d at 680). Any "custom" derives from LIRC's exercise of discretion based on each case's particular facts and circumstances. While this exercise of discretion may often result in a dismissal without prejudice, each case's facts are different, and a particular case may warrant a dismissal with prejudice. That is the very nature of a discretionary determination.

### 4. Alternative to withdrawal and due process concerns

The appellants make various arguments concerning the relief to be afforded when an ALJ is biased. They argue that ch. 102, STATS., leaves them no alternative or "safety valve" other than withdrawal, but this argument is intertwined with their contention that their due process rights were violated because Ryan was biased under *Guthrie*.[11] At oral argument, the appellants also challenged LIRC's failure to establish a

---

[11] In their briefs, Toland, Black, and Burke assert that dismissal with prejudice violated their equal protection rights.

procedure or mechanism for proving an ALJ's bias as a violation of due process. It is unclear whether the appellants intend to present two issues or one; therefore, we address these intertwined arguments together.

Pursuant to *Guthrie*, the appellants argue that the following demonstrate bias in violation of their due process rights: (1) attorneys' affidavits indicating their beliefs that Ryan is biased; (2) the comments Ryan allegedly made off-the-record that because of appellants' counsel's association with WATL and attorneys associated with WATL, he would dismiss the claims with prejudice; and (3) Ryan's record, which they claim shows a "remarkable tendency towards employers and against employees."[12]

Baldwin confines his due process argument to Ryan's alleged off-the-record comments. He submits that an applicant's due process right in worker's compensation cases derives from § 102.18(1)(a), STATS., which provides that parties are afforded the "opportunity for a full, fair, public hearing." Baldwin claims this language refers to a fair public hearing before an unbiased ALJ. The appellants' arguments do not persuade us.

■

Due process requires that an adjudicator in an administrative hearing be fair and impartial. *See Nu-Roc Nursing Home, Inc. v. DHSS*, 200 Wis. 2d 405, 415, 546 N.W.2d 562, 566 (Ct. App. 1996); *State ex rel. DeLuca v. Common Council*, 72 Wis. 2d 672, 684, 242

Because they withdrew this contention at oral argument, we will not address it.

[12] Toland, Black, and Burke state that of 105 cases appealed during a five-year period, in only eight cases did Ryan "make any sort of award to an employee."

N.W.2d 689, 695–96 (1976). There is a presumption of honesty and integrity in those serving as adjudicators in State administrative proceedings. *Nu-Roc*, 200 Wis. 2d at 415, 546 N.W.2d at 566. An administrative decision can violate due process either by bias in fact on the part of the decisionmaker or when the risk of bias is impermissibly high. *Id.* at 415–16, 546 N.W.2d at 566.

At oral argument, the appellants conceded that if ch. 102, STATS., does not allow applicants to withdraw their applications at any time and for any reason, their only argument for withdrawal is that their due process rights were violated because Ryan was biased. LIRC found that neither the statistical data, the affidavits, nor the off-the-record conversation between Ryan and Baldwin's counsel demonstrates Ryan's bias. LIRC noted that Ryan denied stating that Baldwin's application would be dismissed because of counsel's association with WATL and attorney Cochrane. LIRC also noted that Luppino/American Economy's counsel concurred with Ryan's recollection of this off-the-record conversation, and LIRC found their versions credible. It stated that Ryan's order fully explains the reasons for his decision to dismiss with prejudice and that the reasons were not related to Baldwin's attorney's association with WATL or Cochrane. This court does not weigh the evidence or pass upon the credibility of witnesses; rather, LIRC determines the weight and credibility of evidence. *Ide v. LIRC*, 224 Wis. 2d 159, 165, 589 N.W.2d 363, 366–67 (1999). Thus, the bias argument fails because under the version of the conversation that LIRC found credible and adopted, Ryan was not biased, and because LIRC found the affidavits and statistical data failed to establish bias. LIRC's factual determination that no bias exists is therefore conclu-

sive on appeal. *See id.* at 165, 589 N.W.2d at 366 (citing § 102.23(6), STATS.).[13]

Additionally, to the extent that the appellants argue that their due process rights to notice, opportunity to present evidence, or right to be heard on the evidence or the law were violated, the record fails to provide support. The appellants had notice of the hearing, and Ryan gave them the opportunity to present evidence and did not exclude any evidence they sought to present. *See* § 102.17(1)(c), STATS. (providing that an applicant has the right to present evidence at the hearing, including presenting witnesses). In fact, at oral argument, the appellants conceded that all their evidence of the alleged bias was presented for LIRC's review. Thus, because all their evidence of the alleged bias was placed on the record for LIRC's review, we do not see how a failure to establish a specific procedure or mechanism for challenging the ALJ denied them any due process rights.[14]

---

[13] Section 102.23(6), STATS., provides in part: "If the commission's order or award depends on any fact found by the commission, the court shall not substitute its judgment for that of the commission as to the weight or credibility of the evidence on any finding of fact."

[14] Baldwin makes a somewhat different argument that his procedural due process rights were violated because he had no notice that an ALJ can "dismiss withdrawals" with prejudice. Due process does not require a hearing on the merits before entry of a default against a defendant who fails to make a timely appearance after adequate notice. *See Boddie v. Connecticut*, 401 U.S. 371, 378 (1971). Due process requires that a hearing be held on the imposition of a penalty for failure to comply with a court order only if there is no fair and adequate warning by court rule or notice of the possibility of such penalty. *See Latham v. Casey & King Corp.*, 23 Wis. 2d 311, 316, 127 N.W.2d 225, 228 (1964). Baldwin received adequate notice that a default

Finally, we dispose of the appellants' arguments that "withdrawal" is the only "safety valve" because on review, they would have to show an "abuse of discretion."[15] Toland, Black, and Burke further maintain that to have proceeded with the hearing and then timely appealed "would have been an exercise in futility" because Ryan's "track record" indicates that they would not have received a fair and impartial hearing. Further, they contend, without citation to authority, that; "As the Court is aware, a party is not required to follow all procedures in the administrative process if following such procedures are clearly futile. This is basic black letter law." They insist that to make applicants go through the motions of presenting a case at hearing before a biased ALJ places an unnecessary burden on the applicant.[16] Baldwin makes a similar argument and argues that requiring an applicant to proceed with a hearing before a biased ALJ, he analogizes, is a "useless kafkaesque" and "unworkable burden," because it is much more difficult, if not impossible, he claims, to correct bias on review. The appellants essentially argue that LIRC's review is lim-

could be entered if he failed to appear. His argument that he was entitled to "notice" that his application could be dismissed with prejudice is not a procedural due process argument, but simply recasts his argument that the agency has no discretion to deny a motion to withdraw.

[15] In their briefs, Toland, Black, and Burke relied on § 227.46(6), STATS., to support their due process argument, but at oral argument, they withdrew their reliance on that statute.

[16] Toland, Black, and Burke also argue that requiring an employee to proceed with a hearing before a biased and prejudiced ALJ, and then appeal, violates an employee's due process rights. Because this due process argument is wholly undeveloped, we will not address it. See State v. Flynn, 190 Wis. 2d 31, 58, 527 N.W.2d 343, 354 (Ct. App. 1994).

ited much as is a circuit court's certiorari review that it therefore affords no real remedy. We disagree.

The appellants' arguments neglect the issue of who determines the futility of proceeding with the hearing—the appellants, the ALJ, or LIRC. Under the appellants' logic, applicants would determine if such futility exists. We agree with respondents that the appellants' arguments are based on their erroneous assertion that LIRC's standard of review of an ALJ's decision is misuse of discretion. Further, we agree that the appellants' argument is misplaced because it fails to acknowledge that LIRC reviews both the ALJ's legal *and factual determinations* de novo. *See* § 102.18(3), STATS. The legislature has indeed provided a mechanism to safeguard an applicant's rights to an unbiased ALJ—§ 102.18(3) which provides:

> A party in interest may petition the commission for review of an examiner's decision awarding or denying compensation . . . . The commission shall either affirm, reverse, set aside or modify the findings or order in whole or in part, or direct the taking of additional evidence. This action shall be based on a review of the evidence submitted.

Our legislature has articulated this mechanism as the safeguard the appellants claim is lacking. We have no power to alter the statute's plain language. Under ch. 102, STATS., the appellants should have presented the merits of their cases at the hearing and then appealed to LIRC. We note, however, that LIRC did review all the evidence the appellants presented at the hearing regarding their alleged claim of bias; LIRC resolved the bias issue in the agency's favor. This notwithstanding, we express our concern that no formalized procedure or mechanism exists by which an applicant may establish an ALJ's bias. We urge LIRC

625

or the legislature to consider adopting some mechanism or procedure to allow a party to challenge the impartiality or bias of the assigned ALJ.

*By the Court.*—Judgments affirmed.